Merrick, PJ.
Plaintiff Intech, Inc. (“Intech”) is a Massachusetts corporation with its place of business in Acton. In early 1995, Intech’s president, Jack Baker (“Baker”), decided to get Intech into the business of acquiring IARCs, a type of amphibious vessel/vehicle used during the Vietnam War. Baker wanted to “corner the market” in IARCs. To that end, Baker requested a friend, William Taylor (‘Taylor”), to assist him because Taylor’s employment with an airline permitted him free travel for their endeavor.
In October of 1995, Baker or Taylor saw an advertisement for the sale of a LARC in “Boats and Harbors,” a nationally distributed magazine. The ad had been placed by defendant Triple “C” Marine Salvage, Inc. (‘Triple C”), a Louisiana corporation located in Morgan City, Louisiana. Taylor called the telephone number listed in the ad and spoke with Triple C’s president, Jack Cloutier (“Cloutier”). With Baker’s assent, Taylor reached an agreement with Cloutier for Intech’s purchase of the IARC for $16,000.00, with delivery to be taken in Louisiana. In November of 1995, Taylor arranged for the shipment of the IARC back to Massachusetts, where it was found to be in “reasonable condition.”
Baker then spoke with Cloutier to inform him that Intech would be interested in purchasing other LARCs. In response to that request, Cloutier called Taylor in December, 1995, and told him that he had found a LARC in as good, if not better, condition than the first one. The LARC was not owned by Triple C and was located in Florida. After some discussion, it was agreed that Triple C would buy the LARC and resell it to Intech for $16,000.00. Shipment from Florida to Massachusetts was to be the responsibility of Intech. The $16,000.00 was paid in January, 1996. When the LARC arrived in Massachusetts in February of 1996, it was found to be in a “very poor, unserviceable, unsalvageable” condition.
Intech commenced this action in the Concord Division of the District Court Department to recover for Triple C’s alleged breach of contract, breach of warranty and misrepresentation.[1] Triple C filed a Mass. R. Civ. P., Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, which was denied by a motion judge prior to trial. Intech’s tort claim was dismissed on summary judgment, and Intech has not appealed that decision. Triple C’s Rule 12(b)(2) motion was renewed, and again deified, at trial. After trial, judgment was entered in favor of Intech in the amount of $16,000.00 plus shipping costs on the ground that ‘Triple *14 C did breach its agreement "with Intech to deliver a LARC in the same or better condition than the first LARC, thus entitling plaintiff to recover on its breach of warranty and contract claims against Triple C.”
Triple “C” filed this Dist./Mun. Cts. R. A. D. A, Rule 8C, appeal of the denials by the motion judge and the trial judge of its Rule 12(b) (2) motion to dismiss for lack of personal jurisdiction.
The Massachusetts “long arm” statute provides, in pertinent part:
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s
(a) transacting any business in this commonwealth;
(b) contracting to supply services or things in this commonwealth;
(c) causing tortious injury by an act or omission in this commonwealth;
(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; ...
G.L.c. 223A, §3. As the judgment was not based upon a tort claim, subsections (c) and (d) of the statute do not provide the basis of jurisdiction herein. “Because the standard of performance is set by the defendant’s promises, rather than imposed by law, an express warranty claim is and generally has been understood to be an action of contract, rather than of tort.” Anthony’s Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818, 822 (1986). Section (b) is, however, inapplicable. Where a foreign seller’s only obligation is to deliver goods to a shipper outside the Commonwealth for transport to the Commonwealth at the expense of the buyer, the seller may not be said to be “contracting to supply services or things in this commonwealth” within the meaning of G.L.c. 223A, §3(b). Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 158-159 (1978).
The dispositive question, therefore, is whether Triple C may be said to have been “transacting any business in this commonwealth” under G.L.c. 223A §3(a). The Supreme Judicial Court has viewed the function of the long arm statute as “an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.” “Automatic” Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441, 443 (1972).
In Droukas v. Divers Training Academy, Inc., supra, the Court dealt with facts identical to the first transaction between the parties in this case, including the fact of an advertisement in “Boats and Harbors” magazine. The buyer in Droukas, upon seeing the magazine ad, called the Florida seller and purchased two engines which were then shipped “collect” to Massachusetts. As we have noted, the Drou-kas Court considered those facts insufficient to show delivery inside the Commonwealth. In the present case, there is no question that the LARCs which were the subject of the two transactions between the parties became the property and responsibility of Intech in Louisiana and Florida, respectively.
The first transaction at issue herein was identical in all significant respects to the transaction in Droukas and plainly did not constitute “transacting any business in this commonwealth.” The only difference between the parties’ two transactions in this case is that the second may be argued to have been initiated by a single telephone call by Triple C to Massachusetts. But even that call was in response to an invitation by the plaintiff-buyer, Intech. Intech is unable to cite any case in *15 which a single telephone call into a state was held to establish a sale, otherwise consummated outside the Commonwealth, which amounted to “transacting any business in this commonwealth.”
The essence of Intech’s argument, however, is that the two instances of Triple C’s not “transacting any business in this commonwealth,” taken together, constitute “transacting any business in this commonwealth.” We do not doubt that a sufficient number of transactions, none of which alone constitute “transacting any business in this commonwealth” could, cumulatively, amount to that very thing. But the burden of establishing facts sufficient to support personal jurisdiction in this case was on Intech. Droukas, supra at 151. In light of the discussion in Droukas, supra at 154-157, we view the sale of the two LARCs by Triple C as isolated transactions, “with slight effect on the commerce of the Commonwealth and as void of any purposeful intent on the part of the defendant to avail itself of the privilege of conducting activities within the forum State.” Id. at 154.
The judgment for the plaintiff is vacated, the denial of the defendant’s Rule 12(b) (2) motion is reversed, and the action is dismissed for lack of personal jurisdiction.
So ordered.

 Intech’s fourth claim for G.L.c. 93A damages was decided against it at trial, and has not been made the subject of this appeal.